UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-3 AYOB NASSER,

      Defendant.

CASE NO:   25-cr-20842
HON. LINDA V. PARKER

_____/

**BRIEF IN SUPPORT OF AYOB NASSER'S MOTION TO
DISCLOSE AND SUPPRESS FISA MATERIALS**

The government had recently labeled Mr. Nasser, and others, agents of a foreign power under the Foreign Intelligence Surveillance Act, and thus subjected him to surveillance and searches outside the confines of the Fourth Amendment.

1. On November 6, 2025, the government filed notice of its intent to use information "obtained or derived from electronic surveillance and physical search conducted pursuant to the [FISA] of 1978, as amended, 50 U.S.C. §§ 1801-1812. (ECF No. 24, Gov't FISA Notice).  This notice simply informed the defense that the government has FISA evidence and intends to use it but did not identify the information it plans to use or the basis for the national security surveillance.

The defense moves to discover all evidence, intelligence, counterintelligence,

1

FISA applications, FISA orders, and all information concerning surveillance of Mr. Nasser, and the national security justification for all governmental actions concerning Mr. Nasser.   The defense also moves to suppress information and material obtained unlawfully, and any fruits of searches supported by the unlawfully obtained material.

## ARGUMENT

Congress enacted FISA in response to perceived abuses of intelligence gathering and surveillance procedures by federal intelligence agencies in the early 1970s.   See *American Civil Liberties Union v. Clapper*, 785 F.3d 787, 792-93 (2d Cir. 2015). FISA "is not to be used as an end-run around the Fourth Amendment's prohibition of warrantless searches."  *United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991).   Thus, when a defendant moves for discovery and suppression of FISA materials, the Court must engage in a careful, detailed examination of whether the government complied with the law in obtaining FISA-covered evidence.   As part of this process, the Court may disclose these materials to the defense if, without defense input, it "is unable to make an accurate determination as to the legality of the evidence."  *United States v. Daher*, No. 18-20559, 2020 WL 7664789, at *2 (E.D. Mich. Dec. 24, 2020).

Ayob Nasser is an aggrieved person who has received notice.   50 U.S.C. §

2

1806(e) provides an aggrieved person the right to challenge the surveillance as unlawful or that the evidence was not obtained in conformity with the order or the minimization procedures of the Act.

Under U.S.C. § 1806(f), the government may invoke an in camera, ex parte process for review of FISA materials.   Under that process, "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States," then this Court reviews "in camera and ex parte" any "materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved was lawfully authorized and conducted." *Id.*   "In making this determination, the court may disclosed to the aggrieved person [here, Mr. Nasser], under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance."   *Id.*

"Section 1806(f) vests sole authority to hold legality hearings in a district court."   § 9:48. Ex parte, in camera determination, 2 LAW OF ELECTRONIC SURVEILLANCE. § 9:48. If the Attorney General does not file an affidavit as discussed above, then discovery must proceed in a standard manner.   *Id.* "In determining whether disclosure is necessary, the Court should consider whether,

3

after its initial review, any irregularities are reveled, such as whether: the materials evidence a possible misrepresentation of fact; the persons to be surveilled are not clearly identified; or the surveillance records include a significant amount of nonforeign intelligence information, indicating a possible issue with the minimization standard utilized." *United States v. Mahamud*, 838 F. Supp. 2d 881, 885 (D. Minn. 2012).

There are multiple questions this Court must answer in reviewing these materials.   The following is a non-exhaustive list of issues:

First, the Court must determine whether the primary purpose of the surveillance was "domestic criminal activity, which is not authorized by FISA." *United States v. Daoud*, 761 F.3d 678, 682 (7th Cir. 2014).   "Although evidence obtained under FISA subsequently may be used in criminal prosecutions, the investigation of criminal activity cannot be the primary purpose of the surveillance." *United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991) (cleaned up) (emphasis added).

Second, this Court must review whether the FISA application complied with the requirements for such applications, which "must contain, among other things, a certification that the purpose of the requested surveillance is the gathering of foreign intelligence information and a detailed description of the nature of the information

sought."   *Id.*   (emphasis added).   This review includes examining whether the government properly certified that the information sought through the FISA process could not "reasonably be obtained by normal investigative techniques."   50 U.S.C. § 1823.   It also includes examining whether the government conducted its surveillance in accordance with minimization procedures FISA requires.   50 U.S.C.A. § 1823(a)(3).

Third, the Court must decide whether any FISA warrants or applications were supported by probable cause: "Like any search warrant, a FISA application must be supported by probable cause."   *Daoud*, 761 F.3d at 681.   This probable cause determination differs from the standard analysis this Court undertakes because it focuses on whether Mr. Nasser was an "agent of a foreign power."   *Daher*, 2020 WL 7664789, at *4.

Fourth, FISA demands particularity:   The Court must be satisfied that the government has shown "each of the facilities, places, premises, or property at which the electronic surveillance or physical search was directed was; or was about to be owned, used, possessed by, or was in transit to or from [Mr. Nasser].   *Id.*

Fifth, even assuming the government needed to use the secret FISA process initially, this Court must determine whether that need for secrecy still exists.   See *United States v. Warsame*, 547 F. Supp. 2d 982, 989 (D. Minn. 2008).

5

These are complicated questions, and they should be evaluated with defense input in this case.  Mr. Nasser thus requests that, pursuant to this procedure, this Honorable Court review and disclose any FISA applications, FISA orders, and FISA materials under appropriate security procedures and protective orders.   Mr. Nasser further requests the opportunity to review the Attorney General's affidavit attesting that disclosure of evidence would harm national security.

This case echoes concerns raised by Congress, when it authorized changes to FISA in 2001, that "'it will be up to the courts to determine how far law enforcement agencies may use FISA for criminal investigation and prosecution beyond the scope of the statutory definition of 'foreign intelligence information.'" In *re Sealed Case*, 310 F.3d 717, 733 (Foreign Int. Surv. Ct. Rev. 2002) (quoting Senator Leahy, 147 Cong. Rec. S11004 (Oct. 25, 2001)).   This Court should authorize and compel disclosure of the FISA applications and orders in this case, especially any FISA surveillance that resulted in evidence used to establish probable cause for later non-FISA searches.

## CONCLUSION

Under 50 U.S.C. § 1806, this Court should do the following:

1. Compel the government to determine if the Attorney General will submit an affidavit attesting that disclosure of FISA applications, FISA orders, and other FISA materials in this case would harm national security;

2. Provide Mr. Nasser a copy of the Attorney General affidavit, if filed;\

3. Conduct an in camera, ex parte inspection of any FISA applications, FISA orders, and FISA materials, and determine whether the surveillance was lawfully authorized and appropriately conducted;

4. Disclose any FISA applications, FISA orders, and FISA materials to defendant's counsel because such disclosures are necessary to make an accurate determination of the legality of the surveillance; and

5. Suppress all information unlawfully acquired or surveillance conducted not in conformity with an order of authorization or approval, and suppress any fruits of unlawfully surveillance or searches.

Respectfully submitted,

JAMES C. THOMAS, P.C.

By:   /s/ James C. Thomas
James C. Thomas (P23801)
Attorney for Defendant
Ayob Nasser D-3
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
586-726-1000

Dated:   November 17, 2025

7