# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-20842 |
| Plaintiff, | Magistrate Judge: David R. Grand |
| v. | |
| AYOB NASSER (D-3), | |
| Defendant. | |

## DEFENDANT AYOB NASSER'S MOTION AND BRIEF IN SUPPORT TO REVOKE THE CONSENT ORDER OF DETENTION AND FOR RELEASE ON CONDITIONS PURSUANT TO 18 U.S.C. § 3142

Defendant Ayob Nasser (hereinafter referred to as "Mr. Nasser"), by and through his attorneys, James C. Thomas and Michael C. Naughton, hereby files this Motion and respectfully moves this Honorable Court under 18 U.S.C. § 3142(c)(1)(B) to revoke the Consent Order of Detention and to release him pending trial on the least restrictive conditions that will reasonably assure his appearance and the safety of the community. In support, counsel submits:

1. Mr. Nasser, who is nineteen years old, is charged with providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C.

1

§ 2339B, and with an offense under 18 U.S.C. § 924(h). He has been detained with consent since his arrest on November 5, 2025.

2. On November 10, 2025, the Honorable Magistrate Judge Anthony P. Patti ordered Mr. Nasser detained pending trial (**Exhibit A**, Consent Order of Detention, ECF No. 34). Until this time, that Order has not been challenged.

3. The offense charged under § 2339B gives rise to a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3). As set forth in the accompanying Brief in Support, Mr. Nasser believes that at the conclusion of this motion, he will have rebutted that presumption. This hearing is requested under 18 U.S.C. § 3142(f). The Government cannot be held to carry its burden of persuasion, that no condition or combination of conditions will reasonably assure Mr. Nasser's appearance in court and/or reasonably assure the safety of the community, 18 U.S.C. § 3142.

4. Pursuant to E.D. Mich. LR 7.1(a), undersigned counsel sought concurrence in the relief requested in this motion. Following a conversation with AUSA Erin L. Ramamurthy on July 27, 2026, it was determined the government opposes the relief requested.

WHEREFORE, Ayob Nasser respectfully requests that this Honorable Court conduct a de novo hearing and; at conclusion, revoke the previous Consent Order of

2

Detention and order Ayob Nasser's release on the conditions proposed in the accompanying brief, or on such other conditions as the Court deems appropriate.

Respectfully submitted,


/s/ James C. Thomas
James C. Thomas (P23801)
Michael C. Naughton (P70856)
Counsel for Defendant Ayob Nasser
12900 Hall Road, Suite 350
Sterling Heights MI 48313
(586) 726-1000
jthomas@orlaw.com
mike@thenorthcoastlegal.com


Dated: August 13, 2026

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-20842 |
| Plaintiff, | Magistrate Judge: David R. Grand |
| v. | |
| AYOB NASSER (D-3), | |
| Defendant. | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO REVOKE THE CONSENT ORDER OF DETENTION AND FOR RELEASE ON CONDITIONS

### INTRODUCTION

Ayob Nasser is nineteen years old. Before his arrest, he lived at home with his parents. He has no prior criminal history and has never committed any act of violence against any person. The conduct alleged in this case is, at its core, speech—words exchanged online among young men (many of them underage minors). The firearm the Government has identified to Mr. Nasser was lawfully obtained and stored unloaded at his home. His transportation of weapons was to and from gun ranges for target practice. There has been no explosive or destructive device alleged in this case. No attack was ever really confirmed to any identified target or date, and no

act of violence ever occurred and/or attempted, or in any way was imminent. Conversations reporting an alleged plan are tenuous at best.

Mr. Nasser's own conduct confirms that he is neither a danger nor a flight risk. When federal agents executed a search warrant at his home on October 31, 2025, he sat with agents and answered their questions. While he had not been arrested at that time. He remained at home and was arrested almost a week later, on November 5, 2025, without incident. Mr. Nasser was questioned by the government for well over an hour. The agents stressed the importance and seriousness of the allegations; yet, given the opportunity, he did not flee. Mr. Nasser has in the past engaged in foreign travel with family for medical reasons and had a passport. His brother was ill and received treatment in Turkey. Once charged, Mr. Nasser's passport was surrendered immediately upon request by the Government.

Under the Bail Reform Act, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755; 107 S. Ct. 2095; 95 L. Ed. 2D 697 (1987). The Defendant in this case is presumed to be innocent by the United States and Michigan Constitutions. The controlling Sixth Circuit authority, United States v. Stone, 608 F.3d 939 (6th Cir. 2010), supplies both the governing framework and—on its facts—the clearest illustration of why detention is not warranted here. In Stone, the defendants were charged with conspiracy sedation and gun law violations. They were detained on

5

both risk of flight and danger to the community.  It was alleged that the defendants did not merely possess firearms; they had amassed arsenals of dozens of weapons *together with* components for improvised explosive devices, kept lists of public officials to target.  It was also alleged that they had planned an operation to murder a law-enforcement officer and then bomb the ensuing funeral procession. Id. at 947–53. What justified detention was the marriage of that capacity to a concrete plan to kill. The Indictment of Mr. Nasser presents nothing comparable to those: no explosives or destructive devices, no target, no date, and no operational plan of any kind.

Counsel suggests that too often we see very little deference to the presumption of innocence in these cases.  Stone sets the framework for our analysis of bond in the instant matter.  While the Stone defendants were detained, counsel attempts to point out distinctions.  It should not be lost that each of the defendants was acquitted of the most serious sedation charges; all but two wasting away in detention for 42 months before they were completely acquitted by the trial Judge before the case went to the jury.

The statutory presumption for Mr. Nasser is readily rebutted, and the Government cannot carry its burden of persuasion. Mr. Nasser should be released on conditions outlined herein.

6

## BACKGROUND

### A. Procedural History

Mr. Nasser is charged with providing material support to a designated foreign terrorist organization, 18 U.S.C. § 2339B, and with an offense under 18 U.S.C. § 924(h). Federal agents executed a search warrant at his home on October 31, 2025. Mr. Nasser was arrested days later, on November 5, 2025, and has been detained since. Trial is now scheduled for December 2026. To date, the Government has made eight (8) discovery productions, with the 8th being recently delivered to counsel. Given the current status of discovery and the fact that no decision has been made to join the juvenile defendants,[1] a trial date before mid-year 2027 appears unrealistic.

### B. Ayob Nasser's History and Characteristics

Mr. Nasser is nineteen years old and a United States citizen. He was born in Dearborn, Michigan and has lived in Dearborn for his entire life, until his incarceration in the instant matter. Until his arrest, he resided with his parents and family at 5909 Horger Street, Dearborn, Michigan 48126. Mr. Nasser graduated from Dearborn Magnet High School and has received his high school diploma. As stated above, he has no prior criminal history. His parents are prepared to serve as

---

[1] Two juvenile co-defendants are challenging the transfer of their cases to be tried as adults. There has not yet been determination by this Honorable Court as to the transfer of those cases from juvenile status to this case.

7

third-party custodians and to supervise him at home where he resided at the time of his arrest.

The Government has identified firearms stored in an offsite U-Haul storage facility. Mr. Nasser's weapon and ammunition were at his home.  It has been removed.  The firearms and ammunition were lawfully obtained.  No explosives, or destructive devices were ever found (counsel's understanding is that none is involved); and whatever firearms alleged to have been possessed or owned have been seized and are now in the Government's custody.  As a result, Mr. Nasser has no access to them.

The allegations as they relate to Ayob Nasser concern words, not deeds. Across the first seven (7) discovery productions, the record reflects no confirmed target, no date, and no confirmed plan.  There is significant evidence that no violent attack was shown to be imminent.

## LEGAL STANDARD

The Bail Reform Act commands release pending trial unless a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The default position of the law … is that a defendant should be released pending trial." Stone, 608 F.3d at 945; *see* Salerno, 481 U.S. at 755.

For certain offenses—including the § 2339B charge here—a grand jury's finding of probable cause triggers a rebuttable presumption "that no condition or combination of conditions will reasonably assure" appearance and safety. 18 U.S.C. § 3142(e)(3); Stone, 608 F.3d at 945. That presumption "imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" Id. The defendant's burden of production "is not heavy"; he satisfies it by "com[ing] forward with evidence that he does not pose either a danger to the community or a risk of flight." Id.

Whether or not the presumption applies, the Government bears the ultimate burden of persuasion in a detention hearing. To detain on the ground of dangerousness, it must prove by *clear and convincing evidence* that no conditions will reasonably assure the "safety of the community." 18 U.S.C. § 3142(f)(2)(B); Stone, 608 F.3d at 945. To detain on the grounds of the "risk of nonappearance," it must prove that no conditions will reasonably assure the defendant's appearance by a *preponderance of the evidence. See* United States v. Nagi, No. 09-1995 (6th Cir. Dec. 14, 2009) (attached **Exhibit B**, unpublished order) ("The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness ... by clear and convincing evidence."). (Nagi, who was detained because of perceived danger, was released on bond after 42 months awaiting trial based on due process grounds).

9

This Honorable Court must weigh the factors set out in § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence … [or] a Federal crime of terrorism …; (2) the weight of the evidence against the person; (3) the history and characteristics of the person …; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The inquiry is individualized: "each defendant is entitled to an individualized determination of bail eligibility." Stone, 608 F.3d at 946. And consideration of these factors "shall not be construed to modify or limit the presumption of innocence." 18 U.S.C. § 3142(j).

## ARGUMENT

The Defendant consented to the imposition of a detention order, subject to review at a later time. He is entitled to a review of detention under these circumstances upon demand.

### I. Mr. Nasser Rebuts the Presumption of Detention.

The burden to rebut the § 3142(e)(3) presumption is one of production only, and it "is not heavy." Stone, 608 F.3d at 945. Ayob Nasser satisfies it easily. He is nineteen years old, has no prior criminal history, and has lifelong ties to this community. He lived at home with his parents until his arrest, which occurred one week after the arrest of his co-defendants. The Defendant is, as are all defendants,

10

presumed innocent. Considering the discovery, counsel contends Mr. Nasser is less culpable than the other co-defendants and posits that the risk of flight has virtually been eliminated based upon the delay in his arrest.

Mr. Nasser, only nineteen years of age, agreed to questions without counsel. Ayob cooperated with federal agents when they searched his home the week before his arrest.

Mr. Nasser's parents, who were also interviewed, are prepared to serve as third-party custodians. This is far more than the "some evidence" the law requires to shift the burden analysis back to the Government. Id.

## II. The Government Cannot Show by Clear and Convincing Evidence That No Conditions Will Reasonably Assure the Safety of the Community.

With the presumption rebutted, it "remains a factor," Stone, 608 F.3d at 945–46, but the burden of persuasion rests—and always rests—with the Government, which must prove dangerousness by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). It cannot make that showing on this record.

## A. The Nature and Circumstances of the Offense: Firearms Without a Plan Are Not the Arsenal Wired to a Plot That Justified Detention in Stone.

The charges are serious, and Mr. Nasser does not suggest otherwise. The Government has identified firearms at the Defendant's home and otherwise stored in an offsite storage unit that Mr. Nasser supposedly shared with others, who are co-defendants. But the possession of firearms, practicing with weapons on two of four

11

proposed occasions, and even having ammunition, standing alone, do not establish the kind of danger that warrants pretrial detention. Lawful firearm ownership in Michigan is common and constitutionally protected, and the § 3142(g) inquiry asks not whether a defendant owns a gun, but what danger his *release* would actually pose. Without weapons and ammunition, and with the close supervision and GPS, the presumption is rebutted. Mr. Nasser's association with the U-Haul storage facility was tenuous. He was never there, and he did not store his weapon or ammunition there. Mr. Nasser was merely a secondary contact for his brother who actually rented the space at the facility.

What made detention appropriate in Stone was not gun ownership as such; it was the marriage of an arsenal to a concrete plan to kill. In Stone, the Government alleged the defendants had amassed dozens of firearms *and* components for improvised explosive devices, *and* maintained lists of officials to target, *and* had planned an operation to murder a law-enforcement officer and bomb his funeral procession. 608 F.3d at 947–53. There are no equivocal facts here.

Mr. Nasser's circumstances are categorically different: the firearms were stored offsite rather than staged for use; there were no explosives or destructive devices; and there was no list, no identified target or date, and no operational plan of any kind. Because the storage unit was shared with his brothers, moreover, Mr. Nasser is entitled to individualized determination and may not be detained on the

basis of the group's aggregate conduct or possessions. Id. at 946. A court may not order detention on the nature of the charge alone, lest we forget what happened in Stone (supra), and the presumption of innocence should be preserved. 18 U.S.C. § 3142(j).[2]

## B. The Weight of the Evidence of Dangerousness—Not Guilt—Is Thin.

This factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948 (citing United States v. Hazime, 762 F.2d 34 (6th Cir. 1985)).

## C. Mr. Nasser's History and Characteristics Favor Release.

Mr. Nasser is now nineteen years old. The Supreme Court has repeatedly recognized that young people "lack ... maturity," are "more vulnerable ... to negative influences and outside pressures," and possess character traits that are "more transitory, less fixed" than those of adults. Roper v. Simmons, 543 U.S. 551, 569–70; 125 S. Ct. 1183; 161 L. Ed. 2D 1 (2005); *see* Miller v. Alabama, 567 U.S. 460, 471; 132 S. Ct. 2455; 183 L. Ed. 2D 407 (2012); Graham v. Florida, 560 U.S. 48, 68; 130 S. Ct. 2011; 176 L. Ed. 2D 825 (2010); J.D.B. v. North Carolina, 564

---

[2] The ultimate disposition of Stone underscores the point. After the defendants were detained and tried without bond, the district court granted judgments of acquittal under Federal Rule of Criminal Procedure 29 on the seditious-conspiracy and weapons-of-mass-destruction charges, dismissing them before the case ever reached the jury. *See* United States v. Stone, No. 2:10-cr-20123 (E.D. Mich. Mar. 27, 2012, docket no. 767). The court found that the lead investigator "admitted ... the group never had a date, time, target or plan for any attack," and held that "vague antigovernment hate speech simply does not amount to an agreement as a matter of law." Even in a case involving actual firearms and explicit statements about harming law enforcement, the Government's proof ultimately reduced to protected speech. (Two defendants later pleaded guilty to firearms offenses and sentenced to time served; the remaining defendants were acquitted outright.)

U.S. 261, 272; 131 S. Ct. 2394; 180 L. Ed. 2D 310 (2011). Those characteristics cut two ways that each favors release: they reduce the culpability the charged words reflect, and they make Mr. Nasser especially amenable to redirection through supervision, counseling, and the structure of court-ordered conditions. Mr. Nasser has no criminal record, has strong and stable family ties, lived at home until his arrest, and cooperated with law enforcement. His medical condition is serious and will be addressed in a **sealed exhibit** with copies to the government.

## D.  Mr. Nasser Poses No Danger That Conditions Cannot Reasonably Address.

The § 3142(g)(4) inquiry asks about the actual danger release would pose. In Stone, that danger was concrete: defendants with the means (large weapons caches and IED components) and a plan to kill. 608 F.3d at 949–54. Here, by contrast, there were no explosives or destructive devices, no operational capability, and no plan tied to any target or date; the firearms the Government has identified were stored offsite and are now in its custody, not staged for use and not accessible from Mr. Nasser's home. Any residual concern is fully addressed by conditions—home detention, GPS monitoring, third-party custodianship, a firm no-firearms condition, no-contact conditions, and monitored, restricted internet access—which together would leave Mr. Nasser no access to any weapon. Indeed, the Sixth Circuit has held—in a serious case from this District—that even a credited risk of flight or danger "can be ameliorated by house arrest and an electronic tether." United States v. Nagi, No. 09-

14

1995 (6th Cir. Dec. 14, 2009) (unpublished order). The Act requires only a "reasonable assurance" of safety, not a guarantee. *See* Salerno, 481 U.S. at 755.

## III. Mr. Nasser Presents No Serious Risk of Flight.

The Government must prove risk of nonappearance by a preponderance of the evidence. Nagi, No. 09-1995 (6th Cir. Dec. 14, 2009). Mr. Nasser's conduct forecloses that showing. He knew he was under investigation—agents searched his home and questioned him on October 31, 2025—yet he did not flee. He remained at home and was arrested there almost a week later, on November 5, 2025, without incident. He has lifelong ties to this district and to his family, his passport was already surrendered, and has every incentive to see this case through. In Nagi, the Sixth Circuit ordered release on precisely these conditions even though the district court's finding of a risk of flight had been sustained; *a fortiori*, home detention with GPS monitoring, a third-party custodian, and surrender of any travel documents will reasonably assure the appearance of Mr. Nasser, whose own conduct affirmatively rebuts any serious risk of flight. Nagi, No. 09-1995 (6th Cir. Dec. 14, 2009).

## IV. A Combination of Conditions Will Reasonably Assure Appearance and Safety.

The Court may craft conditions that address any residual concern. Mr. Nasser proposes, among any others the Court deems appropriate:

(1)     release to the third-party custodianship of his parents, 18 U.S.C. § 3142(c)(1)(B)(i), with whom he will reside, with home visit beforehand to confirm long stable living conditions and inducement to reside;

(2)     home detention with GPS location monitoring, blocking out certain areas if necessary;

(3)     confirm surrender of any passport and/or travel document and no application for any new passport and/or travel document;

(4)     no contact with any co-defendant (including his brothers, except as the Court permits for legal defense) nor with any individual or organization affiliated with a foreign terrorist organization or that promotes violence;

(5)     no possession of, or access to, any firearm, ammunition, destructive device, or other weapon, and no entry into the storage facility at issue;

(6)     restricted, monitored internet access on a single approved device, with no access to communication to any site advocating the use of violence ISIS/ISIL, Al Qaeda, or the like, as directed by Pretrial Services;

(7)     mental-health or other evaluation and treatment as directed by Pretrial Services; and/or

(8)     random home and community visits by Pretrial Services and regular reporting.

These are the very conditions the Sixth Circuit has held sufficient in a serious, presumption-governed case from this District. In Nagi, the court reversed a detention

16

order and directed release on bond—doing so even though it had sustained the district court's finding that the defendant posed a risk of flight—because the risks "can be ameliorated by house arrest and an electronic tether." United States v. Nagi, No. 09-1995 (6th Cir. Dec. 14, 2009) (unpublished order).[3] That the charged offense triggered the § 3142(e) presumption was no barrier to release there, and it is none here. Comparable conditions have likewise been approved for defendants charged with providing material support to designated foreign terrorist organizations.

## CONCLUSION

For these reasons, Mr. Nasser respectfully requests that this Honorable Court revoke the consent order of detention and release him on the conditions proposed above, or on such other conditions as the Court deems appropriate.[4]

Respectfully submitted,

/s/ James C. Thomas
James C. Thomas (P23801)
Michael C. Naughton (P70856)
Counsel for Defendant Ayob Nasser
12900 Hall Road, Suite 350
Sterling Heights MI 48313
(586) 726-1000
jthomas@orlaw.com
mike@thenorthcoastlegal.com

Dated: August 13, 2026

---

[3] Nagi is an unpublished order. Under Federal Rule of Appellate Procedure 32.1 and Sixth Circuit Rule 32.1, unpublished dispositions issued on or after January 1, 2007 may be cited; such dispositions are not binding precedents but may be considered for their persuasive value.

[4] Because Mr. Nasser's pretrial detention will span many months before trial, he respectfully reserves the right to seek release on due-process grounds should his continued confinement become excessively prolonged. See United States v. Salerno, 481 U.S. 739, 747 n.4 (1987); United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986) (a determination under § 3142 is "without prejudice to a defendant petitioning for release at a subsequent time on due process grounds").

17

# CERTIFICATE OF SERVICE

I certify that on August 13, 2026, I electronically filed the foregoing Motion

and Brief in Support with the Clerk of the Court using the ECF system, which will

send notification of such filing to all counsel of record.

/s/ Alida Andrianos
Alida Andrianos
Paralegal to James C. Thomas

18

# EXHIBIT A

(EDMI rev 04/23) Consent Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

for the
Eastern District of Michigan

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 25-30673 |
| | ) | |
| Ayob Nasser | ) | |
| | ) | |
| | ) | |

## CONSENT ORDER OF DETENTION PENDING TRIAL/HEARING

Pursuant to the Bail Reform Act, 18 U.S.C. §3142 et. seq., the United States has moved for detention of the defendant and defendant is entitled to a timely hearing pursuant to 18 U.S.C. §3142(f). However, Defendant, in open court and with the advice of counsel, agrees to remain in custody and consents to detention, reserving his right to a full detention hearing before the magistrate judge. Therefore, no hearing will be held, no adverse findings are made against defendant, and detention is ordered based upon the defendant's consent. Whenever a defendant has waived the right to a detention hearing and later decides he/she wants one, defendant must arrange a time for the hearing with the United States Attorney's Office and contact the duty Magistrate Judge to schedule the hearing.

### Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: November 10, 2025

s/Anthony P. Patti

*Judicial Officer's Signature*

Anthony P. Patti, U.S. Magistrate Judge

*Printed name and title*

# EXHIBIT B

No. 09-1995

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 14, 2009<br>LEONARD GREEN, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | O R D E R |
| AREF NAGI, aka Steve, | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS, MOORE, and COOK, Circuit Judges.

The defendant, Aref Nagi, appeals a district court order denying his third motion for release on bond pending trial on racketeering and related charges. He has been detained awaiting trial since 2006. We unanimously agree that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a).

The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. A defendant shall be detained pending trial if, after a hearing, the district court finds that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(f). Section 3142(g) sets out the factors to be considered in making that determination. The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person and the community by clear and convincing evidence. "We review mixed questions of law and fact and the district court's legal conclusions *de novo*." *United States v. Vasilakos*, 508 F.3d 401, 410 (6th Cir.

2007). A finding of fact in support of pretrial detention will not be disturbed on appeal unless clearly erroneous. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

Subject to rebuttal by the defendant, it is presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community if the judicial officer finds there is probable cause to believe that the person committed certain offenses. The indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption. *Id.* at 37; *see also United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("Our holding that the indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e) is in accord with the unanimous position of the other circuits that have reached the issue."). Nagi does not dispute that the offenses with which he is charged trigger the presumption. *See* 18 U.S.C. §§ 3142(f)(1)(A)-(C). The presumption shifts the burden of production to Nagi to show that his release would not pose a flight risk or a danger to any person and the community. The government retains the burden of persuasion.

Nagi argues that he presented sufficient evidence to rebut the presumption. We do not agree. The presumption "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of offenders.]'" *United States v. Gray*, 20 F. App'x 473, 475 (6th Cir. 2001) (quoting *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986)). In ordering detention, the district court credited the government's factual assertions regarding Nagi's intent to flee. Given the clear error standard of review that applies to such findings, Nagi's evidence of ties to the United States, while not insignificant, cannot disturb the district court's conclusion. The district court's initial detention of Nagi based on the risk of flight he poses was not in error.

No. 09-1995
- 3 -

Notwithstanding the basis for the initial detention, we must consider whether Nagi's continued detention violates his constitutional right to due process. "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote omitted). There is no particular point at which a valid pretrial detention becomes unconstitutionally excessive; rather, the determination depends on the individual circumstances.

The Second Circuit weighs four factors in determining whether a term of pretrial detention qualifies as constitutionally excessive: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence supporting the detention. *See United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000); *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994); *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993); *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993); *United States v. Gonzales-Claudio*, 806 F.2d 334 (2d Cir. 1986). "Other circuits have recognized that the length of pretrial detention raises a constitutional issue at some point." *Gonzales-Claudio*, 806 F.3d at 339 (citing cases from the Seventh, Third, and Tenth Circuits); *see also United States v. Zannino*, 798 F.2d 544, 548 (1st Cir. 1986); *United States v. Quartermaine*, 913 F.2d 910, 917-18 (11th Cir. 1990). The constitutional significance of the district court's factual findings, including the ultimate determination of whether due process has been violated is reviewed *de novo*. *El-Hage*, 213 F.3d at 79; *Milan*, 4 F.3d at 1043.

A period of pretrial detention as long as Nagi's weighs in favor of finding a due process violation, but is not dispositive. *See Millan*, 4 F.3d at 1044; *Orena*, 986 F.2d at 631. The second factor – the extent of the prosecution's responsibility for the delay of the trial – also weighs in

No. 09-1995
- 4 -

Nagi's favor.  The government must bear some responsibility for the more than two-year delay between Nagi's arrest and the superseding indictment.  The charges against Nagi are serious, but they do not include the even more serious conspiracy to commit murder charges that some of Nagi's co-defendants face, some of whom remain free on bond, and none of whom have spent anywhere close to three-plus years in detention.  Last, we must consider the strength of the evidence underlying the detention, *i.e.*, the evidence of risk of flight and dangerousness.  *See El-Hage*, 213 F.3d at 80.  Nagi has surrendered his passport, and the risks of flight and injury to other persons and the community can be ameliorated by house arrest and an electronic tether.  On balance, we conclude that the relevant factors weigh in favor of release.  *See United States v. Yee*, 900 F.2d 261 (Table), 1990 WL 47383 (6th Cir. 1990) (per curiam) (unpublished decision).

The judgment of the district court is **REVERSED,** and this case is remanded for the district court to fix a reasonable bail and/or conditions for release of the defendant, pending a future trial.

ENTERED BY ORDER OF THE COURT

Leonard Green
Clerk

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

Leonard Green
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 14, 2009

Ms. Diane L. Marion
U.S. Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Mr. James C. Thomas
Plunkett Cooney
535 Griswold Street
Suite 2400 Buhl Building
Detroit, MI 48226

Re: Case No. 09-1995, *USA v. Aref Nagi*
Originating Case No. : 06-20465-001

Dear Counsel:

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Kathryn Kasner
Case Manager
Direct Dial No. 513-564-7014
Fax No. 513-564-7096

cc: Mr. David J. Weaver

Enclosure

Mandate to issue